**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**K.I.,**

                                        **Plaintiff,**

        **vs.**                                                    **1:25-CV-00264**
                                                                   **(MAD/ML)**

**ANN MARIE T. SULLIVAN, M.D., et al.,**

                                        **Defendants.**

_____

**APPEARANCES:**                                **OF COUNSEL:**

**THE BELLANTONI LAW FIRM, PLLC**        **AMY L. BELLANTONI, ESQ.**
2 Overhill Road
Suite 400
Scarsdale, New York 10583
Attorney for Plaintiff

**OFFICE OF THE NEW YORK STATE**         **LELA M. GRAY, AAG**
**ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Counsel for Defendants Ann Marie T. Sullivan,
M.D., Li-Wen Grace Lee, M.D., Carmen Barber,
and Tony Trahan

**OFFICE OF UNITED STATES ATTORNEY**     **KAREN FOLSTER LESPERANCE,**
James T. Foley U.S. Courthouse            **AUSA**
445 Broadway, Room 218
Albany, New York 12207-2924
Counsel for Defendants Pam Bondi and Kash
Patel

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff K.I. commenced this action on February 27, 2025.  *See* Dkt. No. 1.  On April 14, 2025, Plaintiff filed an amended complaint, seeking injunctive, declaratory, and monetary relief for violations of her Second Amendment rights.  *See* Dkt. No. 16.  Through her amended complaint, Plaintiff brings claims against Ann Marie T. Sullivan, M.D., in her official capacity ("Defendant Sullivan"), Li-Wen Grace Lee, M.D, Carmen Barber, and Tony Trahan, in their individual capacities (collectively, "Panel Member Defendants"), as well as Pam Bondi and Kash Patel, in their official capacities (collectively, "United States Defendants").  *See id.* [1]

Broadly speaking, Plaintiff alleges that Defendants unlawfully applied provisions of the Mental Hygiene Law and federal law to permanently disarm her, based on a temporary mental health-related hospitalization in 2019.  Plaintiff also claims that Defendants violated her constitutional rights by denying her application to be removed from the National Instant Criminal Background Check System ("NICS") reporting database ("NICS database") and that Panel Member Defendants violated her constitutional rights by denying her application for a certificate of relief from disabilities relating to firearms ("certificate of relief").

On April 28, 2025, and June 27, 2025, respectively, State Defendants and United States Defendants moved to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 19, 30.  For the reasons that follow, the motions to dismiss are granted.

## II. BACKGROUND

The Court will begin with a discussion of the relevant statutory and regulatory background before discussing Plaintiff's claims related thereto.

---

[1]  On September 24, 2025, the Court so-ordered Plaintiff's voluntary dismissal of the claims asserted against Defendant Rossana Rosado, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Thus, Defendant Rosado is no longer a party to this action.

**A.    Statutory and Regulatory Background**

Federal law prohibits certain individuals from buying, owning, or possessing a firearm, *see* 18 U.S.C. § 922(g), and prohibits dealers from selling firearms to such individuals, *see* 18 U.S.C. § 922(d).  "The Gun Control Act of 1968 created a number of provisions designed 'to deny access to guns and ammunition to . . . defined special risk groups.'"  *Phelps v. Bosco*, 711 Fed. Appx. 63, 64 (2d Cir. 2018) (summary order) (quoting Franklin E. Zimring, *Firearms and Federal Law: The Gun Control Act of 1968*, 4 J. Legal Stud. 133, 152 (1975)).  "Among those 'special risk groups' who are not allowed to buy guns and to whom dealers are not allowed sell guns are those who 'ha[ve] been committed to any mental institution.'"  *Id.* (citing 18 U.S.C. § 922(g)(4)).

Indeed, under 18 U.S.C. § 922(g)(4), it is unlawful for any person "who has been adjudicated as a mental defective or who has been committed to a mental institution" to possess or receive firearms or ammunition.  Federal regulations define "committed to a mental institution" as:

> A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority.  The term includes a commitment to a mental institution involuntarily.  The term includes commitment for mental defectiveness or mental illness.  It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.

27 C.F.R. § 478.11.

"In 1993, to better enable enforcement of its gun control laws, Congress enacted the Brady Handgun Violence Prevention Act ('Brady Act'), which is codified at 18 U.S.C. § 922(t)." *Susman v. Sullivan*, 2025 WL 575515, *4 (W.D.N.Y. Feb. 21, 2025) (citing *Robinson v. Sessions*, 721 Fed. Appx. 20, 21-22 (2d Cir. 2018) (summary order)).  "The Brady Act 'require[d] the

Attorney General to establish a national instant background[ ]check system by November 30, 1998.'" *Id.* (quoting *Printz v. United States*, 521 U.S. 898, 902 (1997)).  "The result was NICS, which refers to the system managed by the FBI . . . that provides information 'on whether receipt of a firearm by a [particular person] . . . would violate [f]ederal or state law.'" *Id.* (quoting 28 C.F.R. § 25.2) (other citation omitted).

"While NICS is a creation of the federal government, it operates with assistance from the states.  Indeed, . . . the NICS [database] includes records from both federal and state agencies." *Id.* at *5 (citing 28 C.F.R. § 25.2).  "In 2007, Congress passed the NICS Improvement Amendments Act, which aimed to make the federal background check system more comprehensive, including by providing grants to assist states in submitting all relevant records to NICS." *Id.* *5 (citing NICS Improvement Amendments Act of 2007, Pub. L. 110-180, 122 Stat. 2559) (footnote omitted).

"In response to the NICS Improvement Amendments Act, 'New York State law was amended to allow relevant mental health records to be made accessible to NICS.'" *Id.* (quoting *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 316 (W.D.N.Y. 2018)).  New York's record-sharing statutory provision provides, in relevant part, that:

> The commissioner [of the Office of Mental Health ("OMH")], in cooperation with other applicable state agencies, shall collect, retain or modify data or records, and shall transmit such data or records:
>
> (i) to the division of criminal justice services, or to the criminal justice information services division of the federal bureau of investigation, for the purposes of responding to queries to the [NICS database] regarding attempts to purchase or otherwise take possession of firearms as defined in 18 USC 921(a)(3), in accordance with applicable federal laws or regulations, or
>
> (ii) to the division of criminal justice services, which may re-disclose such data and records . . . for determining whether a person

> is no longer permitted under federal or state law to possess a
> firearm.  Such records . . . shall include only names and other non-
> clinical identifying information *of persons who have been
> involuntarily committed to a hospital pursuant to article nine of this
> chapter* . . . .

N.Y. Mental Hyg. Law § 7.09(j)(1) (emphasis added).

The New York Mental Hygiene Law ("MHL" or "Mental Hygiene Law") defines

"hospital" as, among other things, "the in-patient services of a psychiatric center under the

jurisdiction of [OMH]," "a psychiatric in-patient facility maintained by a political subdivision of

the state," "a ward, wing, unit, or other part of a hospital . . . operated as a part of such hospital for

the purpose of providing services for the mentally ill," "or other facility providing in-patient care

or treatment of the mentally ill . . . ."  N.Y. Mental Hyg. Law § 1.03(10).  And OMH regulations

define "committed to a mental institution" as:

> a formal commitment of a person to a mental institution by a court,
> board, commission, or other lawful authority.  Such term includes a
> commitment to a mental institution involuntarily; commitment for
> mental defectiveness or mental illness; and commitments for other
> reasons, such as for drug use, provided, however, that such term
> does not include a person in a mental institution for observation or a
> voluntary admission to a mental institution.  For purposes of this
> Part, committed to a mental institution shall include persons who
> have been involuntarily committed or confined pursuant to article 9
> or 10 of the Mental Hygiene Law . . . .

14 N.Y. Comp. Codes R. & Regs ("N.Y.C.R.R.") § 543.4.

Mental Hygiene Law § 9.39[2] ("MHL § 9.39") permits, for a period of fifteen days, the

involuntary admission to a hospital with qualifying mental-health services any person with "a

mental illness for which immediate observation, care, and treatment in a hospital is appropriate

---

[2]  MHL § 9.39 is a section of article 9 of the Mental Hygiene Law, which is referenced in N.Y.
Mental Hyg. Law § 7.09(j)(1) and 14 N.Y.C.R.R. § 543.4.

and which is likely to result in serious harm to [herself] or others." N.Y. Mental Hyg. Law §

9.39(a). "Like[ly] to result in serious harm" means, in relevant part:

> 1. a substantial risk of physical harm to [herself] as manifested by
> threats of or attempts at suicide or serious bodily harm or other
> conduct demonstrating that [she] is dangerous to [herself], or
>
> 2. a substantial risk of physical harm to other persons as manifested
> by homicidal or other violent behavior by which others are placed
> in reasonable fear of serious physical harm.

*Id.* Involuntary admission under MHL § 9.39 is permitted "only if a staff physician of the hospital

upon examination of such person finds that such person qualifies under the requirements of this

section." *Id.* And to retain such person for longer than forty-eight hours, the first physician's

finding must be confirmed by a second physician "who shall be a member of the psychiatric staff

of the hospital." *Id.*

As required by the NICS Improvement Amendments Act, New York adopted MHL §

7.09(j)(2), which "sets forth a process for removing a name from the NICS list by seeking a

certificate of relief[.]" *Houston v. Nassau Cnty. Police Dep't*, 2020 WL 7643132, *3 (E.D.N.Y.

Dec. 23, 2020). A certificate of relief may be granted where the Commissioner of OMH or her

designee(s) determine that a "person's record and reputation are such that such person will not be

likely to act in a manner dangerous to public safety and where the granting of the relief would not

be contrary to public safety." N.Y. Mental Hyg. Law § 7.09(j)(2); *see* N.Y.C.R.R. § 543.5.

If the application for a certificate of relief is granted, the psychiatric commitment "is

deemed not to have occurred" for the purpose of the federal law disarmament. 34 U.S.C. §

40915(b). And if the application is denied, the applicant can "file a petition with the State court

of appropriate jurisdiction for a *de novo* judicial review of the denial." *Id.* § 40915(a)(3). In New

York, the *de novo* judicial review of a denial of a certificate of relief can be accomplished through

an Article 78 proceeding. *See D.B. v. Sullivan*, No. 1:22-CV-0282, 2025 WL 1033883, *10 (N.D.N.Y. Jan. 31, 2025), *R&R adopted*, 2025 WL 864043 (N.D.N.Y. Mar. 19, 2025) (citing *Houston*, 2020 WL 7643132, at *3) (footnote omitted). "Further, an aggrieved individual can resubmit a renewed request for a certificate of relief . . . related to firearms one year after the denial of a prior request." *Id.*

**B.    Allegations in the Amended Complaint**

The following recitation of facts is drawn from the amended complaint; these facts are presumed true at this juncture.[3]  Plaintiff is a United States citizen and resident of Ulster County, New York. *See* Dkt. No. 16 at ¶ 19.  In May 2019, Plaintiff visited a hospital emergency room on two occasions for panic attacks and anxiety. *See id.* at ¶¶ 140, 143, 145.  On May 14, 2019, Plaintiff was hospitalized for "inpatient stabilization" due to a diagnosis of "Psychiatric Diagnosis: Depressive disorder, atypical[.]" *Id.* at ¶¶ 143-149.  Plaintiff's medical records indicated, among other things, that "when her panic attacks occurred today[,] she began having thoughts of self[-]harm." *Id.* ¶ 149.  Nevertheless, an emergency room attending physician noted that Plaintiff did not represent a danger to herself or others but that Plaintiff did require inpatient stabilization. *See id.* ¶ 146.  Plaintiff was hospitalized pursuant to MHL § 9.39. *See id.* at ¶ 83.

On May 17, 2019, after being committed to the hospital for three days, Plaintiff was discharged. *See id.* at ¶ 150.  Following this hospitalization, OMH reported plaintiff to NICS as a person "committed to a mental facility" pursuant to MHL § 7.09(j). *Id.* at ¶ 151.  After Plaintiff

---

[3]  The Court does not, however, consider the myriad of legal conclusions contained in the amended complaint. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss'") (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d. Cir. 2002)).

learned that she had been reported to NICS as a person "committed to a mental facility," she applied to the Office of NICS Appeals ("ONA") for a certificate of relief.  *Id*. at ¶¶ 151-52.

Plaintiff's medical and hospital records were forwarded to the ONA, along with her application for a certificate of relief.  *See id.* at ¶¶ 153-54.  Plaintiff also sent a follow-up letter to the ONA Panel Members on March 13, 2023.  *See id.* at ¶ 157.  On June 21, 2023, the Panel Members issued a written denial of Plaintiffs' application.  *See id*. at ¶ 166.

In the present matter, Plaintiff does not challenge the constitutionality of involuntary commitments under MHL § 9.39.  *See generally*, *id.*  Rather, Plaintiff requests declaratory judgments that 18 U.S.C. § 922(g)(4) violates the Second Amendment as applied to MHL § 9.39 admissions and as applied to her, and that MHL § 7.09(j) violates the Second Amendment as applied to MHL § 9.39 admissions and as applied to her.  *See id.* at 29.  Plaintiff also seeks orders enjoining Defendants Bondi and Patel from enforcing 18 U.S.C. § 922(g)(4) against individuals based solely on MHL § 9.39 admissions, including Plaintiff.  *See id.*  Plaintiff further requests orders directing Defendants Bondi and Patel to remove her 2019 hospital admission and all disqualifying information from NICS and CJIS, and directing Defendant Sullivan to take all steps necessary to remove Plaintiff's information from the OMH and DCJS databases, NICS, and CJIS related to Plaintiff's 2019 hospital admission as well as the personal identifying information of all individuals reported to NICS and/or CJIS based solely on a MHL § 9.39 admission.  *See id.* at 29-30.  Finally, Plaintiff requests a declaratory judgment that 14 N.Y.C.R.R. § 543.5 is unconstitutional on its face and as applied to her.  *See id.* at 30.

To achieve this relief, Plaintiff brings six causes of action for violation of the Second Amendment, pursuant to § 1983: (1) 18 U.S.C. § 922(g)(4) is unconstitutional as applied to brief, emergency admissions like those under MHL § 9.39; (2) 18 U.S.C. § 922(g)(4) is unconstitutional

as applied to Plaintiff; (3) MHL § 7.09(j) is overbroad in violation of the Second Amendment as applied to MHL § 9.39 admissions; (4) MHL § 7.09(j) violates the Second Amendment as applied to Plaintiff; (5) 14 NYCRR § 543.5 violates the Second Amendment facially and as applied to Plaintiff; and (6) Panel Member Defendants violated Plaintiff's Second Amendment rights. *See id.* at ¶¶ 180-91  The crux of Plaintiff's claims is that MHL § 709(j) violates the Second Amendment to the extent it requires reporting MHL § 9.39 admissions to NICS and 18 U.S.C. 922(g)(4) violates the Second Amendment to the extent it does not exclude admissions under MHL § 9.39 from its definition of persons "committed to a mental institution."

Although not made explicitly clear in Plaintiff's attorney-drafted amended complaint, the Court reads the first and second causes of action to be brought against United States Defendants, the third, fourth, and fifth causes of action to be brought against Defendant Sullivan, and the sixth cause of action to be brought against Panel Member Defendants.

## C.    Defendants' Motions to Dismiss

State Defendants and United States Defendants seek dismissal of the amended complaint. *See* Dkt. Nos. 19, 30.  State Defendants argue: (1) Plaintiff's third, fourth, and fifth causes of action should be dismissed for lack of standing; (2) Defendant Sullivan is entitled to sovereign immunity under the Eleventh Amendment; (3) Defendant Sullivan and Panel Member Defendants are entitled to quasi-judicial immunity; and (4) Defendant Sullivan and Panel Member Defendants are entitled to qualified immunity as to Plaintiff's claims for money damages.  *See* Dkt. No. 19-2 at 14-28.  United States Defendants contend that: (1) this Court lacks subject matter jurisdiction over Plaintiff's claims because she failed to exhaust her state law remedies; and (2) Plaintiff's Second Amendment challenge to New York's implementation of federal requirements for firearms

restrictions on persons who have been committed for mental health issues fails as a matter of law. *See* Dkt. No. 30-1 at 7-22.

Upon review of United States Defendants' submissions, the Court observed that, although ripeness was not explicitly mentioned, "United States Defendants implicitly argue that Plaintiff's claims are subject to dismissal on ripeness grounds because Plaintiff has failed to bring an Article 78 proceeding for review of the denial of her application for a certificate of relief from disability related to firearms possession." Dkt. No. 39. Accordingly, the Court ordered supplemental briefing on the issue of ripeness. *See id.* United States Defendants submitted a supplemental memorandum of law. *See* Dkt. No. 40. Plaintiff did not file a response thereto.

## III. DISCUSSION

### A.    Legal Standards

"'A court faced with a motion to dismiss pursuant to both Rules 12 (b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.'" *Dutrow v. N.Y. State Gaming Comm'n*, No. 13-CV-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. Appx. 56 (2d Cir. 2015) (quoting *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([*i.e.*,] subject-matter jurisdiction)") (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When subject matter jurisdiction is challenged, a "[p]laintiff[ ] bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). In reviewing a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the

'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations

in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S.

at 558, or where a plaintiff has "not nudged [her] claims across the line from conceivable to

plausible, the [ ] complaint must be dismissed[,]" *id.* at 570.

**B.      Claims Against Defendant Sullivan—Article III Standing**

"Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the

federal courts to 'Cases' and 'Controversies.'" *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211

(2d Cir. 2020) (citing *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019)).  "The doctrine of

standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are

appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573

U.S. 149, 157 (2014) (citation and footnote omitted).

The Supreme Court has "established that the 'irreducible constitutional minimum' of

standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "The plaintiff must have (1) suffered an

injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).

"The traceability requirements for Article III standing means that 'the plaintiff must

demonstrate a causal nexus between the defendant's conduct and the injury.'" *Chevron Corp. v.

Donzinger*, 833 F.3d 74, 121 (2d Cir. 2016) (citation omitted).  However, the causal nexus that

must be demonstrated is something "lower than that of proximate cause." *Rothstein v. UBS AG*,

708 F.3d 82, 91 (2d Cir. 2013).  "Such a nexus is most easily shown if there is a direct

relationship between the plaintiff and the defendant with respect to the conduct at issue." *Id.*  But,

"an 'indirect[ ]' relationship between the injury and the challenged conduct does not necessarily

mean that the plaintiff lacks standing, although it may make the showing required 'substantially more difficult.'" *Susman*, 2025 WL 575515, at \*7 (quoting *Rothstein*, 708 F.3d at 91).

"The third element, called 'redressability,' refers to 'a non-speculative likelihood that the injury can be remedied by the requested relief.'" *Id.* at \*8 (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008)). "There is no redressability where such depends on an independent actor who retains 'broad and legitimate discretion [that] the courts cannot presume either to control or to predict.'" *Neary v. Weichert*, 489 F. Supp. 3d 55, 67 (E.D.N.Y. 2020) (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).

"As with any other matter on which the plaintiff bears the burden of proof, each element of standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 119 (2d Cir. 2025) (quoting *Lujan*, 504 U.S. at 561)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 518-19 (2d Cir. 2024) (quoting *Lujan*, 504 U.S. at 561).

State Defendants argue that Plaintiff lacks standing to bring her third, fourth, and fifth causes of action because her alleged injuries are not traceable to State Defendants' conduct and are not redressable through the injunctive relief requested in the amended complaint. *See* Dkt. No. 19-2 at 14-17. State Defendants do not contest the first element of standing—*i.e.*, whether Plaintiff has suffered an injury in fact—therefore, only traceability and redressability are relevant to the Court's analysis herein. Specifically, as for traceability, State Defendants argue that neither MHL § 7.09(j) nor 14 N.Y.C.R.R. § 543.5 bar individuals from purchasing or possessing a

firearm because MHL § 7.09(j) is a reporting statute that authorizes the transfer of records to NICS and 14 N.Y.C.R.R. § 543.5 "merely reiterates that directive and authorizes the establishment of the required 'certificate of relief from disabilities' process for persons whose records were submitted to the NICS system." *Id.* at 16. State Defendants contend, 18 U.S.C. § 922(g)(4)—a federal statute not enforced by State Defendants—is the statute inflicting Plaintiff's injury. *See id.* at 16-17.

And, as for redressability, State Defendants argue that, even if this Court issued an injunction prohibiting the transmission of Plaintiff's MHL § 9.39 admission to NICS, "(1) Plaintiff would still be prohibited by 18 U.S.C. § 922(g) from possessing or purchasing a firearm, (2) Plaintiff's MHL § 9.39 admission would still be a 'commitment to a mental institution' under 18 U.S.C. § 922(g), and (3) a federal prosecutor could therefore still prosecute Plaintiff for purchasing or possessing a firearm." *Id.* at 17 (citing *Susman*, 2025 WL 575515, at *11).

In response, Plaintiff states that her "position . . . is that emergency admissions under § 9.39 do *not* fall within the scope of § 922(g)(4) and that the State is falsely reporting people to NICS." Dkt. No. 22 at 12 (emphasis in original). Further, Plaintiff contends that if the Court determines MHL § 9.39 admissions do fall within § 922(g)(4), "the federal government must defend its regulations from constitutional scrutiny under *Bruen*, as Plaintiff contends that § 922(g)(4) as applied to [MHL] § 9.39 admissions violates the Second Amendment." *Id.*

As an initial matter, New York State courts "have repeatedly held that commitments under [MHL §] 9.39 are involuntary as a matter of law." *Susman*, 2025 WL 575515, at *11 (collecting cases). As such, "the Second Circuit already has found that a commitment under [MHL §] 9.39 is an involuntary commitment under [§] 922(g)(4) and that such a commitment disqualifies an

individual from purchasing a gun under federal law." *Id.* (citing *Phelps*, 711 Fed. Appx. at 64).[4]

Similarly, the Seventh Circuit has also rejected the argument that a commitment in a New York

hospital pursuant to MHL § 9.39 does not constitute a commitment under § 922(g)(4). *See*

*Escamilla v. United States*, 62 F.4th 367, 374 (7th Cir. 2023).

Plaintiff's citation to decisions from other Circuits interpreting hospitalizations pursuant to

different state law does not compel this Court to disregard the Second Circuit's *Phelps* decision,

which directly addresses the intersection of MHL § 9.39 and § 922(g)(4). *See* Dkt. No. 22 at 12-

14. Indeed, in *Phelps*, the Second Circuit relied heavily upon *United States v. Waters*, 23 F.3d 29

(2d Cir. 1994)—a case with precedential effect. In *Waters*, the Second Circuit held that an

"involuntary admission" under MHL § 9.27 "constitute[d] a 'commitment' within the meaning of

18 U.S.C. § 922(g)(4)." *Waters*, 23 F.3d at 36. In so finding, the Circuit rejected the defendant's

argument that because he was hospitalized under MHL § 9.27 without "any formal judicial

'commitment' or adjudication of mental illness," he could not be convicted of violating §

922(g)(4). *Id.* at 34. Although the present case involves a hospitalization under MHL § 9.39, not

MHL § 9.27, in *Phelps* the Second Circuit determined that "*Waters* provides all the guidance we

need" in interpreting whether an involuntary hospitalization under MHL § 9.39 qualifies as a

commitment under § 922(g)(4). *Phelps*, 711 Fed. Appx. at 64-65.[5] Therefore, Plaintiff's

---

[4] As the Western District observed in *Susman*, "[a]lthough *Phelps* is a non-precedential summary order, the parties do not cite—nor has this Court found—any other Second Circuit decisions directly on point." *Susman*, 2025 WL 575515, at *11 n.16. This remains true at the present time.

[5] Plaintiff also argues that MHL § 9.39 admissions are merely for observation and "admissions for observation and evaluation *do not* fall within the scope of § 922(g)(4)." Dkt. No. 22 at 10 (citing 27 C.F.R. § 478.11) (emphasis in original). Albeit, 27 C.F.R. § 478.11—which defines "committed to a mental institution" for purposes of § 922(g)(4)—states that "committed to a mental institution . . . does not include a person in a mental institution for observation or a voluntary admission to a mental institution." However, Plaintiff's interpretation of MHL § 9.39 disregards the statute's plain text; the statute permits the involuntary commitment of persons

overarching position, that her § 9.39 admission was "falsely" reported to NICS because it does not qualify as an involuntary commitment under § 922(g)(4), does not persuade the Court.

Plaintiff further distinguishes *Phelps*, arguing that the decision pre-dates the Supreme Court's *Bruen* decision, and did not involve a constitutional challenge. Dkt. No. 22 at 15. This is true; the plaintiff in *Phelps* "did not raise a constitutional challenge to [New York State officials'] conduct on appeal." *Phelps*, 711 Fed. Appx. at 65. And the Second Circuit noted that "[s]uch a [constitutional] challenge would present complex issues, whether under the Second Amendment or the Due Process Clause." *Id.* However, as the Western District observed in *Susman*, "none of this makes [Plaintiff's] injury any more 'traceable' to [Defendant] Sullivan." *Susman*, 2025 WL 575515, at *12 (discussing similar arguments related to *Phelps*).

Although *Susman* is not directly apposite to the present case (as here Plaintiff has also sued federal actors and the present matter involves a motion to dismiss instead of a motion for preliminary injunction), the Court finds *Susman* to be instructive on the issue of standing. Indeed, the Court finds Plaintiff's challenges to MHL § 7.09(j) and 14 N.Y.C.R.R. § 543.5 suffer from the same defects as those in *Susman*.

As a matter of law, the statute inflicting Plaintiff's alleged injury is § 922(g)(4)—which Plaintiff challenges in her first and second causes of action. *See* Dkt. No. 16 at ¶¶ 180-183. Neither MHL § 7.09(j) nor 14 NYCRR § 543.5 substantively bar any individual from purchasing or possessing a firearm. As noted, § 922(g)(4) is a criminal statute that prohibits a person "who

---

"alleged to have a mental illness for which immediate observation, **care, and treatment** in a hospital is appropriate" and can be employed only where the alleged mental illness "is likely to result in serious harm" to the mentally ill person or to others. N.Y. Mental Hyg. Law § 9.39 (emphasis added). Thus, it does not appear that "observation" is the only objective accomplished by a MHL § 9.39 admission. The Court need not, and does not, venture to define this statutory language, but merely points this out as potential additional support for the conclusion that MHL § 9.39 admissions qualify as commitments under § 922(g)(4).

has been committed to a mental institution" from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

As State Defendants point out, Plaintiff essentially argues that "in the absence of state reporting, the federal government would never *know* that she is disqualified under federal law from possessing or owning a firearm." Dkt. No. 26 at 6 (citing Dkt. No. 22 at 16) (emphasis in original). But, regardless of whether the State reported Plaintiff's MHL § 9.39 commitment to NICS, Plaintiff is prohibited from possessing a firearm under § 922(g)(4). *See Susman*, 2025 WL 575515, at *10 ("OMH's report is not even a but-for cause of [the plaintiff's] possession of firearms being illegal . . . . [MHL §] 7.09(j) is only a reporting statute that authorizes the transfer of records to NICS, it has no effect on what is actually illegal—as opposed to what is flagged as being illegal. Put still another way, NICS is a tool designed to flag unlawful transactions and thus to 'prevent guns from falling into the wrong hands. But the mere fact that someone has passed a NICS background check does not mean that the person's possession of a weapon is, in fact, legal") (quoting *Abramski v. United States*, 573 U.S. 169, 172 (2014)). As such, Plaintiff's injury is not fairly traceable to Defendant Sullivan because she does not enforce the statute that actually causes the alleged injury. *See id.* at *7 ("[C]ourts have frequently found that an injury was not 'fairly traceable' to the conduct of a defendant who did not enforce the statute causing the alleged injury") (collecting cases).

Further, under federal law Plaintiff would be compelled to disclose her involuntary commitment via a Firearms Transaction Record prior to taking possession of a firearm. *See id.* at *4 ("Each 'prospective customer[ also] must complete . . . the [Bureau of Alcohol, Tobacco, Firearms, and Explosives] Form 4473, which elicits personal information and propounds questions to certify that the customer is qualified to possess a firearm under the enumerated Brady

17

Act factors'") (quoting *Robinson*, 721 Fed. Appx. at 22).  In question 21(g) of the Firearms

Transaction Record (Form 4473) an applicant must certify whether they have been committed to a

mental institution.  *See* U.S. Department of Justice Bureau of Alcohol, Tobacco, Firearms and

Explosives Form 4473 (5300.9) (revised August 2023), https://www.atf.gov/firearms/docs/4473-

part-1-firearmstransaction-record-over-counter-atf-form-53009/download (last accessed Jan. 20,

2026).  Form 4473 states that any person who answers "yes" to question 21(g) is "prohibited from

receiving, possessing, or purchasing a firearm."  *Id.*

Plaintiff's bald assertion, with no citation to legal authority, that the New York State

Legislature "decided which events to codify as firearms disqualifiers under MHL § 7.09(j)—and

the list includes temporary and brief hospital admissions under [MHL] § 9.39" does not alter the

Court's conclusion.  Dkt. No. 22 at 12.  Congress enacted 18 U.S.C. § 922, which disarms persons

"committed to any mental institution."  18 U.S.C. § 922(d)(4), (g)(4).  And federal regulations

give meaning to the term "committed to a mental institution," defining it as including involuntary

commitments by a lawful authority.  *See* 27 C.F.R. § 478.11.  The New York State Legislature

does not define who is prohibited from possessing firearms under federal law.

Indeed, MHL § 7.09(j) and 14 N.Y.C.R.R. § 543 do not themselves disarm persons

involuntary committed.  As the court observed in *Susman*, MHL § 790(j) "is a *reporting* statute;

by its own terms, it imposes no criminal penalties [or] proscriptions . . . [and] it simply authorizes

the transfer of records to NICS."  *Susman*, 2025 WL 575515, at *9 (citing N.Y. Mental Hyg. Law

§ 7.09(j)(1)).  "And rule 543 merely reiterates that directive."  *Id.* (citing 14 N.Y.C.R.R. §

543.1(c)).  As such, "neither [§] 7.09(j) nor rule 543 bar[] anyone from purchasing or possessing a

weapon.  To argue otherwise is to confuse the whistleblower with the prosecutor, the person who

calls in a tip with the arresting officer."  *Id.*

Stated another way, MHL § 7.09(j) and 14 N.Y.C.R.R. § 543 merely regulate the transmittal of records "in accordance with [the] applicable federal laws or regulations" and provide a process for lifting the prohibition on gun possession by formerly committed persons through an application for certificate of relief.  N.Y. Mental Hyg. L. § 7.09(j); *see* 14 N.Y.C.R.R. § 543.1 *et seq*.  State Defendants are not free to change what Congress defined as "committed to a mental institution."  As the court aptly stated in *Susman*:

> Federal law provides that if a state grants 'an application for relief' under a certificate of relief from disability program 'with respect to an adjudication or a commitment to a mental institution . . . the adjudication or commitment, as the case may be, is deemed not to have occurred for purposes of subsections (d)(4) and (g)(4) of section 922 of Title 18.  In other words, if relief is granted through this state process—which [the plaintiff] thus far has declined to pursue—then federal law provides that [§] 922(g)(4) no longer applies.  But the state has no free-floating power to otherwise determine the correct interpretation of [§] 922(g)(4), much less how it will be enforced.

See *Susman*, 2025 WL 575515, at *12 (quoting 34 U.S.C. § 40915).

In sum, § 922(g)(4) would continue to disarm Plaintiff even if this Court enjoined MHL § 7.09(j) and 14 N.Y.C.R.R. § 543.5 in the manner requested in the third, fourth, and fifth causes of action.  For these reasons, the Court finds Plaintiff's injury is not traceable to Defendant Sullivan and her injury is not redressable through these causes of action.  *See Susman*, 2025 WL 575515, at *13 ("Regardless of what the Court orders OMH to do, [the plaintiff] will not be able to purchase and possess a firearm legally absent some action by the federal government or a change to the interpretation of federal law in this [C]ircuit").  Accordingly, Plaintiff's claims against Defendant Sullivan are dismissed without prejudice for lack of standing.

**C.    Claim Against Panel Member Defendants—Quasi-Judicial Immunity**

19

State Defendants argue that Panel Member Defendants and Defendant Sullivan are entitled to quasi-judicial immunity because they perform functions closely associated with the judicial process. *See* Dkt. No. 19-2 at 20-23. Plaintiff contends that State Defendants are not entitled to quasi-judicial immunity because "they have no connection to the judicial process." Dkt. No. 22 at 28.

For purposes of evaluating quasi-judicial immunity, State Defendants request that the Court take judicial notice of 14 N.Y.C.R.R. §§ 543.1-543.6, which are the regulations that establish the certificate of relief from disabilities process. *See* Dkt. No. 19-2 at 22. "Courts may take judicial notice of rules or regulations governing certain proceedings to determine whether they are quasi-judicial in nature." *Richey*, 2025 WL 1836492, at *13 (taking notice of 14 N.Y.C.R.R. §§ 543.1-543.6); *see D.B.*, 2025 WL 1033883, at *9 (same). Accordingly, the Court takes judicial notice of 14 N.Y.C.R.R. §§ 543.1-543.6. *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (finding that the district court properly took judicial notice of New York Correction Rules and Regulations at motion to dismiss stage of 42 U.S.C. § 1983 action).

Generally, courts agree that issues of absolute immunity are properly considered under Rule 12(b)(6). *See Wang v. Delphin-Rittmon*, 664 F. Supp. 3d 205, 218 (D. Conn. 2023). "Judicial and quasi-judicial immunity are both absolute immunities." *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009), *certified question answered*, 304 Conn. 234 (2012) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 521 (1985)). "[F]ederal law on quasi-judicial immunity applies to state officials sued in federal court on federal claims." *Id.*; *see Kuck v. Danaher*, 822 F. Supp. 2d 109, 147 (D. Conn Sept. 29, 2011) (observing "quasi-judicial immunity should only extend to claims against defendants sued in their individual and not official capacities") (citation omitted). Quasi-judicial immunity entitles the holder "to absolute immunity for acts taken pursuant to [his or her] office."

*Finn v. Anderson*, 592 Fed. Appx. 16, 18-19 (2d. Cir. 2014) (internal quotation marks and citations omitted).

"[O]fficials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages") (citing *Mitchell*, 472 U.S. at 526). This absolute immunity "extends to administrative officials performing functions closely associated with the judicial process because the role of the 'hearing examiner or administrative law judge . . . is functionally comparable to that of a judge.'" *Id.* (quoting *Butz v. Economou,* 438 U.S. 478, 513 (1978)) (internal quotation omitted). Absolute "judicial immunity is conferred in order to [e]nsure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347 (1871)).

Additionally, in a § 1983 action "brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

To determine whether quasi-judicial immunity applies, courts consider six factors: (i) "the need to assure that the individual can perform [his or her] functions without harassment or intimidation;" (ii) "the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;" (iii) "insulation from political influence;" (iv) "the importance of precedent;" (v) "the adversary nature of the process;" and (vi) "the correctability of error on appeal." *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (citing *Butz*,

438 U.S. at 512); *see Gross*, 585 F.3d at 80 (noting the "federal test [for quasi-judicial immunity] involves applying the so-called *Cleavinger* factors").  The "immunity analysis is 'functional' and scrutinizes the actual responsibilities of the government official in question in light of the six factors." *Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995) (quoting *Butz*, 438 U.S. at 512).

However, the six factors above are "just a few of the many checks on malicious action by judges." *Butz*, 438 U.S. at 512 (footnote omitted).  Ultimately, to ascertain whether an official is entitled to quasi-judicial immunity, courts take "a functional approach and look to the particular acts or responsibilities that the official performed." *King v. Simpson*, 189 F.3d 284, 287-88 (2d Cir. 1999).

To accomplish this functional approach analysis, courts must conduct "'[s]ome factual inquiry' to determine if the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity." *Id.* at 288 (quoting *Stewart v. Lattanzi,* 832 F.2d 12, 13 (2d Cir.1987)).  For instance, "a parole board official is absolutely immune from liability for damages when he 'decide[s] to grant, deny, or revoke parole,' because this task is functionally comparable to that of a judge." *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998) (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981)).

After taking judicial notice of 14 N.Y.C.R.R. §§ 543.1-543.6 and applying the requisite factors, a judge in this District recently found that Li-Wen Grace Lee, M.D., Carmen Barber, Tony Trahan were entitled to quasi-judicial immunity in their function as Panel Members of the ONA.  *See Richey*, 2025 WL 1836492, at *14-16.  In the present matter, after careful

consideration, the Court comes to the same conclusion: all six factors, as well as the functional

approach, weigh in favor of granting Panel Member Defendants absolute immunity.[6]

As for Defendant Sullivan, there is nothing the amended complaint, the regulations, nor

the parties' briefing that suggests she acted in a manner similar to Panel Member Defendants.

Indeed, Plaintiff does not allege that Defendant Sullivan was on the panel that considered her

application for a certificate of relief nor that she personally participated in the denial of her

application. Moreover, Defendant Sullivan is sued in her official capacity only. *See Kuck*, 822 F.

Supp. 2d at 147. As such, Defendant Sullivan is not entitled to quasi-judicial immunity. *See*

*Richey*, 2025 WL 1836492, at *16 (finding same).

Accordingly, Plaintiff's § 1983 claim for money damages against Panel Member

Defendants must be dismissed. And, because Plaintiff "'alleges neither the violation of a

declaratory decree, nor the unavailability of declaratory relief'" any claim for injunctive relief

---

[6] In March 2025, this Court issued a Memorandum-Decision and Order that, at first glance, could appear to contradict a finding here that Panel Member Defendants are entitled to quasi-judicial immunity. *See D.B.*, 2025 WL 864043, at *3. However, the Court's decision in *D.B.* arose under a distinct set of circumstances. In *D.B.*, the plaintiff moved for leave to amend his complaint to add, *inter alia*, Dr. Li-Wen Grace Lee, Carmen Barber, and Tony Trahan as defendants. *See id.* at *1. The magistrate judge issued a Report-Recommendation & Order which, in relevant part, recommended that the plaintiff be permitted to amend because "under the facts and circumstances of this case as it is currently presented, it is not clear from the four corners of the proposed amended complaint or defendants' opposition that the defendant panel members are entitled to quasi-judicial immunity." *D.B. v. Sullivan ("D.B. I")*, No. 1:22-CV-0282, 2025 WL 1033883, *12 (N.D.N.Y. Jan. 31, 2025), *R&R adopted*, 2025 WL 864043 (N.D.N.Y. Mar. 19, 2025). Although the defendants had opposed the motion to amend, no objections to the Report-Recommendation & Order were filed, so the Court reviewed the magistrate judge's recommendations merely for clear error. *See id.* at *1-2. At the time this Court adopted the Report-Recommendation & Order there was "no case directly on point that assesses whether individuals who make the determination whether an individual is entitled to a certificate of relief from disabilities as it relates to firearms are entitled to quasi-judicial immunity." *D.B. I*, at *10. A few months later, the district court decision in *Richey* was issued, which the Court now relies upon as persuasive authority. *See Richey*, 2025 WL 1836492. Given the evolution of the case law over the course of the past year and the procedural differences between *D.B.* and the present matter, the Court is now comfortable reaching the conclusion that Panel Member Defendants are entitled to quasi-judicial immunity.

against Panel Member Defendants is therefore barred under § 1983. *Richey*, 2025 WL 1836492, at *16 (quoting *Montero*, 171 F.3d at 761); *see Fraccola v. DelConte*, No. 6:25-CV-00034, 2025 WL 3228085, *6 (N.D.N.Y. Nov. 19, 2025) ("Here, because Plaintiff did not identify a declaratory decree that Judicial Defendants allegedly violated, 'nor did he establish that declaratory relief was unavailable[,]' judicial immunity applies, shielding Judicial Defendants from liability in their individual capacities") (citing *Sibley v. Watches*, No. 24-855, 2025 WL 2448202, *2 (2d Cir. Aug. 26, 2025)).

**D.    Qualified Immunity**

In the alternative, State Defendants argue that they are entitled to qualified immunity. *See* Dkt. No. 19-2 at 24-28. The Court has found that Panel Member Defendants are entitled to quasi-judicial immunity, therefore, it need not reach the issue of whether they are also entitled to qualified immunity. *See Richey*, 2025 WL 1836492, at *16 n.7. And, as for Defendant Sullivan, she is sued in her official capacity only. *See* Dkt. No. 16 at ¶ 20. Therefore, the affirmative defense of qualified immunity is unavailable to her. *See Rossy v. City of Buffalo*, No. 23-CV-7296, 2025 WL 816301, *5 (2d Cir. Mar. 14, 2025) ("In short, 'with respect to an official-capacity claim, qualified immunity is simply not a defense'") (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012)).

**E.    Dismissal of Claims Against State Defendants With or Without Prejudice**

State Defendants argue that all claims against them should be dismissed with prejudice, *see* Dkt. No. 19-2 at 28. Plaintiff fails to oppose this argument. Nevertheless, because the Court lacks standing with regarding to the claims against Defendant Sullivan, the claims against her must be dismissed without prejudice pursuant to Rule 12(b)(1). *See Carter v. HealthPort Techs.*, *LLC*, 822 F.3d 47, 54 (2d Cir. 2016) ("[W]here a complaint is dismissed for lack of Article III

standing, the dismissal must be without prejudice, rather than with prejudice. Such a dismissal is one for lack of subject matter jurisdiction") (collecting cases). On the other hand, the claims against Panel Member Defendants are dismissed with prejudice pursuant to Rule 12(b)(6). *See Hubbuch v. Small*, No. 25-CV-1003, 2025 WL 1099109, *5 (E.D.N.Y. Apr. 14, 2025) (dismissing claims barred by quasi-judicial immunity with prejudice).

**F.    Claims Against United States Defendants—Prudential Ripeness**

In their supplemental submission, United States Defendants clarify their position: they do not raise an Article III ripeness challenge because they concede that Plaintiff has alleged an actual injury. *See* Dkt. No. 40 at 4. Instead, United States Defendants contend that the amended complaint should be dismissed on prudential ripeness grounds. *See id.* As noted, Plaintiff did not file a response to this prudential ripeness argument, despite being given an opportunity to do so. *See* Dkt. No. 39.

The Second Circuit has repeatedly recognized that prudential ripeness is "'a justiciability doctrine[.]'" *BMG Monroe I, LLC v. Vill. of Monroe*, 93 F.4th 595, 601 (2d Cir. 2024) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003)). As "[j]usticiability is . . . a threshold question[,]" it may be addressed "in advance of consideration of subject-matter jurisdiction." *Id.* at 600-01 (quoting *Can v. United States*, 14 F.3d 160, 162 n.1 (2d Cir. 1994) (internal quotation marks omitted). Thus, the Court will address ripeness as a threshold question before the other arguments raised in United States Defendants' briefing.

"'Ripeness' is a term that has been used to describe two overlapping threshold criteria for the exercise of a federal court's jurisdiction." *Simmonds v. I.N.S.*, 326 F.3d 351, 356-57 (2d Cir. 2003) (citing *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57, n.18 (1993)). "The first such

requirement—which we refer to as 'constitutional ripeness'—is drawn from Article III limitations on judicial power." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 109-10 (2d Cir. 2013) (citations omitted). "The second such requirement—which we refer to as 'prudential ripeness'—is drawn from prudential reasons for refusing to exercise jurisdiction." *Id.* at 110 (citations omitted). "Both constitutional ripeness and prudential ripeness 'are concerned with whether a case has been brought prematurely.'" *Id.* (quoting *Simmonds*, 326 F.3d at 357).

The doctrine of prudential ripeness "is a more flexible doctrine" than constitutional ripeness. *Simmonds*, 326 F.3d at 357. Prudential ripeness "'constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it,' and allows a court to determine 'that the case will be better decided later.'" *In re MTBE Prods. Liab. Litig.*, 725 F.3d 65 at 110 (quoting *Simmonds*, 326 F.3d at 357). This doctrine is "a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." *Simmonds*, 326 F.3d at 357. In determining whether a claim is prudentially ripe, courts ask "'whether [the claim] is fit for judicial resolution' and 'whether and to what extent the parties will endure hardship if decision is withheld.'" *In re MTBE Prods. Liab. Litig.*, 725 F.3d 65 at 110.

Here, the Court agrees with United States Defendants that it would be imprudent to engage in a weighty Second Amendment analysis of the interplay between § 922(g)(4) and the New York state statutory and regulatory scheme regulating firearm ownership at this time because Plaintiff chose not to challenge the denial of her application for a certificate of relief through an Article 78 proceeding. *See* Dkt. No. 40 at 6.

As discussed, Congress incentivized the States, as part of the NICS Improvement Amendments Act of 2007, "to report information to NICS that would disqualify someone from possessing a gun under 18 U.S.C. § 922(g) (such as an involuntary commitment)." *Montgomery*, 291 F. Supp. 3d at 315. Pursuant to 34 U.S.C. § 40915, States must establish a relief from disabilities program as a condition to receiving invectives pursuant to the NICS Improvement Amendments Act of 2007. Specifically, Congress directed the States to establish a relief from disabilities program to permit a person committed to a mental institution under state law to apply to be relieved of the restrictions imposed by 18 U.S.C § 922(g)(4). *See* 34 U.S.C. § 40915. Such relief can be granted if a person can show they "will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 34 U.S.C. § 40915(a)(2). Further, Congress directed that the States must permit "a person whose application for the relief is denied to file a petition with the State court of appropriate jurisdiction for a *de novo* judicial review of the denial." 34 U.S.C. § 40915(a)(3).

"In response to the NICS Improvement Amendments Act of 2007, New York State law was amended to allow relevant mental health records to be made accessible to NICS." *Montgomery*, 291 F. Supp. 3d at 316 (citing New York Bill Jacket, 2008 Senate Bill 8706, Ch. 491). MHL § 7.09(j)(1) gives OMH authorization to collect certain data and to make such information available to queries from NICS. *See id.* And, to comply with 34 U.S.C. § 40915(a)(3), New York's MHL § 7.09(j)(2) establishes a relief from disabilities program. *See Susman*, 2025 WL 575515, at *5-6.

In other words, MHL § 7.09(j) contains New York's relief from disabilities program and establishes a procedure for individuals to seek to have their name removed from the NICS database by applying for a certificate of relief from disabilities. *See* MHL § 7.09(j)(2). And, in

compliance with 34 U.S.C. § 40915(a)(3), the denial of a certificate of relief is subject to judicial

review in state court through an Article 78 proceeding.  *See id.* ("The denial of a petition for relief

from disabilities may be reviewed *de novo* pursuant to the proceedings under article seventy-eight

of the civil practice law and rules")  Federal courts have held that New York's relief from

disabilities program satisfies due process.  *See Houston*, 2020 WL 7643132, at *3.

 After her certificate of relief application was denied, Plaintiff never pursued judicial

review of the denial through an Article 78 proceeding.  *See* Dkt. No. 1 at ¶¶ 151, 166.  Instead,

she filed the instant action, contending primarily that MHL § 709(j) violates the Second

Amendment to the extent it requires reporting MHL § 9.39 admissions to NICS, and that 18

U.S.C. § 922(g)(4) violates the Second Amendment to the extent it does not exclude "brief

emergency admissions under § 9.39" from the definition of "persons committed to a mental

institution."  *Id.* at ¶¶ 6-8, 11-13.

 As for the first prudential ripeness consideration, these novel and complex constitutional

questions are not fit for judicial resolution at this time because Plaintiff refused to pursue the

relief explicitly provided by federal and state statutes and regulations.  As United States

Defendants correctly point out, if Plaintiff were to successfully challenge the denial of a

certificate of relief though an Article 78 proceeding, "her alleged injury would be rectified, and

her constitutional challenge rendered moot."  Dkt. No. 40 at 8.  Practically speaking, Plaintiff asks

this Court to become "embroiled in adjudications that may later turn out to be unnecessary"—a

key consideration in determining prudential ripeness.  *Simmonds*, 326 F.3d at 357; *see Pondolfino*

*v. N.Y. State & Loc. Ret. Sys.*, No. 3:10-CV-00749, 2010 WL 3927624, *4 (N.D.N.Y. Oct. 7,

2010) (dismissing complaint on ripeness grounds where the plaintiff sought to "'bypass the

administrative process and review procedures,' including . . . state court review pursuant to CPLR

Article 78, which "'would create a serious risk that difficult and important constitutional issues would be decided without an adequate factual context or before it was clear that they even need to be decided'") (quoting *Blocksom & Co. v. Marshall,* 582, F.2d 1122, 1124 (7th Cir. 1978)).

The second ripeness consideration, whether and to what extent the parties will endure hardship if decision is withheld, also favors withholding a decision at this time. Plaintiff may re-apply for a certificate of relief and, if such relief is denied, can seek state court review pursuant to Article 78, at which time Plaintiff may raise her constitutional claims. *See Richey*, 2025 WL 1836492, at *14 ("A determination pursuant to MHL § 7.09(j)(2) is subject to Article 78 review . . . . Aside from the availability of Article 78 review, an applicant may reapply for a certificate of relief from disabilities one year after a denial") (citations omitted); *see also Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) ("[C]onstitutional issues can be decided in Article 78 proceedings") (citation omitted). Accordingly, Plaintiff will not suffer undue hardship from dismissal on prudential ripeness grounds. *See Pondolfino*, 2010 WL 3927624, at *4 ("Nor will the plaintiff suffer hardship if the Court declines to entertain this action based on ripeness[, as] . . . any final administrative determination will be subject to state court review pursuant to CPLR Article 78, at which time [the p]laintiff may raise his constitutional claims") (internal quotation marks omitted).

For these reasons, Plaintiff's claims against United States Defendants are dismissed without prejudice as unripe. [7]

## IV. CONCLUSION

---

[7] The threshold justiciability determination of prudential ripeness obviates the need to address United States Defendants' related, but less persuasive, arguments regarding exhaustion of administrative remedies and constitutional avoidance. And, of course, the Court need not venture into any arguments related to the merits of Plaintiff's claims at this time.

After careful review of the pleadings, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that State Defendants' motion to dismiss (Dkt. No. 19) and United States Defendants' motion to dismiss (Dkt. No. 30) are **GRANTED**; and the Court further

**ORDERS** that Plaintiff's claims against Defendant Sullivan are **DISMISSED WITHOUT PREJUDICE but WITHOUT LEAVE TO AMEND** for lack of standing;[8] and the Court further

**ORDERS** that Plaintiff's claims against United States Defendants are **DISMISSED WITHOUT PREJUDICE but WITHOUT LEAVE TO AMEND** as unripe;[9] and the Court further

**ORDERS** that Plaintiff's claims against Panel Member Defendants are **DISMISSED WITH PREJUDICE**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

---

[8] *See Holcombe v. Ingredients Sols., Inc.*, 797 Fed. Appx. 630, 634 (2d Cir. 2020) (summary order) (finding dismissal without prejudice but without leave to amend appropriate where case was dismissed for lack of standing, plaintiff did not request leave to file second amended complaint, and plaintiff could not articulate how she could cure standing deficiencies).

[9] *See Kincade Enters. LLC v. Town of Brookhaven*, No. 25-CV-0476, 2025 WL 2677144, *4 (E.D.N.Y. Sept. 18, 2025) ("Having established that [the p]laintiff[']s dispute is not ripe, this Court need not—indeed, may not—evaluate the merits. Accordingly, the Complaint is dismissed without prejudice, and without leave to amend") (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88-89 (2d Cir. 2002).

**ORDERS** that the Clerk of the Court is respectfully directed to close this case.[10]

**IT IS SO ORDERED.**

Dated:  March 2, 2026
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[10] If Plaintiff believes she can establish standing and ripeness, "she can attempt to bring a new action in federal court, assuming that no independent barrier exists." *Holcombe*, 797 Fed. Appx. at 635 n.2.